UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>v.<br><br>FRANCIS ANDERSON,<br>    *Defendant*. | )<br>)<br>)  Case No. 3:01-cr-265 (OAW)<br>)<br>)<br>)<br>)<br>)<br>) |

**RULING ON MOTION FOR RECOMMENDATION TO THE BUREAU OF PRISONS**

**THIS ACTION** is before the court upon Defendant Francis Anderson's Motion for Recommendation to the Bureau of Prisons (hereinafter, the "Motion"). ECF No. 72. The government opposes the Motion, *see id.* at 7, but did not file a response.

For the following reasons, the Motion is **GRANTED in part** and is **DENIED in part**.

**I.     BACKGROUND**

On October 2, 2003, Mr. Anderson was sentenced to twelve months in prison followed by three years of supervised release for Mailing Threatening Communications, in violation of 18 U.S.C. § 876, ECF No. 55, and the sentence was ordered consecutive to one which Mr. Anderson already was serving out of state court, *see* ECF No. 72 at 1. The federal sentencing court (then-United States District Judge Dominic J. Squatrito) ordered that he "participate in a mental health treatment program" and "not commit another federal, state, or local crime" while on supervised release, *see* ECF No. 60.

Mr. Anderson began his supervised release on April 6, 2005, and was arrested for offenses that took place on various dates from April 2006 to June 2007.  ECF No. 72-1. On March 6, 2008, he was sentenced in state court (across four cases) to five years in

1

prison followed by three years of special parole, upon convictions of three counts of Burglary in the Third Degree, one count of Larceny in the Second Degree (all felonies), and one count of Violation of Probation (for conduct predating the other crimes).  *Id.*[1]  As a result of those state court convictions, Mr. Anderson was found in violation of his federal supervised release in the present case, such release was revoked, and he was sentenced on July 25, 2008, *see* ECF No. 69, to twelve months and one day in prison, consecutive to the state sentence which he was then serving, with a recommendation that he be designated to "a BOP facility which provides mental health treatment."  *See* ECF No. 70, at 2 (then-United States District Judge Christopher F. Droney).  However, while still serving his *state* sentence (and before beginning to serve the consecutive federal sentence imposed in July of 2008), Mr. Anderson was "convicted multiple times [in state court] for assaults on corrections officers and mental health care workers."[2]  ECF No. 72, at 2.  Indeed, he has been continuously incarcerated since July 23, 2007, *see* Inmate Information, Connecticut State Department of Correction website, available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=139042 (last visited Sept. 9, 2005) (attached to the instant order as "Ex. 1"); *see also* ECF No. 72, at 1, and over those eighteen years, he has not yet begun to serve his federal sentence from 2008, which was ordered to run consecutively to the state sentence which he had been serving at that time.  And now his counsel, Attorney Tracy Hayes, attributes Mr. Anderson's

---

[1] Atty. Hayes represents that the convictions were for "three counts of Burglary 3," ECF No. 72 at 2, but he attaches, *id.* at Ex. A, judgment mittimuses listing the crimes herein noted by the undersigned (upon review of the General Statutes of Connecticut for the dates mentioned in those state judgments).
[2] Most recently, on July 19, 2024, Mr. Anderson was sentenced in state court to three years in prison for the "attempted assault of a public safety officer," in violation of Conn. Gen. Stat. § 53a-167c.  *See* ECF No. 78, at 1; *see also* Ex. 1.

repeated misconduct to his deteriorating mental health and his inadequate care in prison. *See* ECF Nos. 72, at 1, 5–6; 78, at 2.

But for Mr. Anderson's subsequent and ongoing criminal conduct resulting in his several intervening state sentences since his federal supervised release sentence was imposed in the instant case back in 2008, Mr. Anderson long should have served his supervised release sentence. *See* ECF No. 72, at 2; *see also* 18 U.S.C. § 3585 (providing that a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of [such] sentence at, the official detention facility at which [such] sentence is to be served"). Accordingly, he moves the court to issue a "non-binding" recommendation to the Federal Bureau of Prisons ("BOP") asking that it designate his current state DOC facility "for the service of his federal sentence, *nunc pro tunc* to March, 2011." ECF No. 72, at 6.

## II.  **LEGAL STANDARD**

Once a federal court has sentenced a defendant to prison, BOP designates their "place of confinement," *see United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997), at "'any available penal or correctional facility . . . maintained by the Federal Government or otherwise,'" *see McCarthy v. Doe*, 146 F.3d 118, 122–123 (2d Cir. 1998) (quoting *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990)); *see also* 18 U.S.C. § 3621(b) (hereinafter, "Section 3621(b)"). BOP has "wide latitude" in such designations. *United States v. Staton*, No. 3:19-cr-00006 (VDO), ECF No. 50, at 2 (D. Conn. Apr. 8, 2024). Indeed, it even may designate a *state* prison to which a defendant is then confined "as a place of *federal* confinement, with the result that [the defendant] would serve his [state and federal]

sentences concurrently."[3]  *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 73 (2d Cir. 2005) (emphasis added); *see also Setser v. United States*, 566 U.S. 231, 235 (2012) (recognizing that "when a person subject to a federal sentence is serving a state sentence, [BOP] may designate the state prison as the place of imprisonment for the federal sentence"); *Wright v. Hudson*, No. 9:12-CV-01638-JKS, 2015 WL 5971055, at *3 (N.D.N.Y. Oct. 14, 2015) (recognizing, "*Nunc pro tunc* designation is a retroactive designation that the BOP may grant in accordance with the discretion it is given under 18 U.S.C. § 3621(b)").

Notwithstanding such wide latitude, BOP must consider "recommendations of the sentencing court" when designating places of confinement.  *See* 18 U.S.C. § 3621(b).  It must consider "any statement by the court" regarding "the purposes" for which it imposed a sentence and the "type of penal or correctional facility" it believes to be "appropriate." 18 U.S.C. § 3621(b)(4)(A)–(B).  However, the court's "views" are "not binding on BOP." *Pineyro*, 112 F.3d at 45.

### III.   DISCUSSION

Mr. Anderson moves the court to issue a "non-binding" recommendation that BOP designate his current state DOC facility "for the service of his federal sentence, *nunc pro tunc* to March, 2011."  ECF No. 72, at 6.  Effectively, this would cause his federal sentence to run concurrently with his state sentences imposed *after* the one to which his federal supervised release violation sentence was ordered to be consecutive.  *Wright*, 2015 WL

---

[3] Because federal courts "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings," *see Setser*, 566 U.S. at 236, courts may review BOP designations, but the standard for such judicial review is "limited to abuse of discretion," *see McCarthy*, 146 F.3d at 123 n. 4 (citing *Barden*, 921 F.2d at 478).

4

5971055, at *4.  Based on the representations in the Motion and Updates, and the broader record before the court, recommending designation is warranted, but the request as to the suggested *nunc pro tunc* date(s) lacks support.  *See, e.g.*, ECF Nos. 70, 72, 75, 78.

When Mr. Anderson was sentenced in federal court on July 25, 2008, for violating his federal supervised release, *see* ECF No. 70; *see also* ECF No. 69, he was serving a five-year sentence for crimes including Burglary in the Third Degree, ECF No. 72-1; *see also* ECF No. 70, at 2.  Judge Droney ordered the federal sentence to run consecutive to *that* particular state sentence which Mr. Anderson was serving at that time.  *See* ECF No. 70, at 2 (imposing a sentence of "12 months and 1 day consecutive to state sentence *now* serving") (emphasis added).  Mr. Anderson remains in DOC custody, but he appears to have completed serving that particular prison sentence.  ECF No. 72, at 2. On the entire record now before this court, the **designation** recommendation now requested (and it is *only* a recommendation, subject to BOP discretion) is warranted.[4]  However, the court cannot find sufficient record support for the *nunc pro tunc* portion of the request.

Thus, the court respectfully recommends that BOP designate Mr. Anderson's state DOC facility for the service of his federal supervised release sentence, but defers to BOP in determining the corresponding *nunc pro tunc* date, for the following reasons.

---

[4] To the extent Atty. Hayes cites to *Staton*, the court notes that *Staton* involved a federal sentence imposed while state charges were then *pending* before the state court, and the federal sentence did not specify whether it was intended to run concurrently or consecutively to any *eventual* state sentence resulting from those then-pending state charges.  *Staton*, No. 3:19-cr-6 (MPS), ECF No. 47 (United States District Judge Michael P. Shea).  The undersigned shares Chief Judge Shea's concern for the outsized impact a federal judge's BOP recommendation could have if it "contravene[s] (even in a non-binding way) the state court's order after a state court judge had given due consideration to an issue this Court did not consider."  *Id.* (*Hon. Michael P. Shea, USDJ*).  Here, Mr. Anderson was serving a state sentence when Judge Droney ordered that the federal sentence would run consecutively to it; His Honor simply did not specify whether it also would be consecutive to sentences for *future* crimes committed by Mr. Anderson even before his release from the state sentence he was then serving.  As did the judges who issued those previous rulings, the undersigned now rules only upon the matter presently before the court, understanding that the ruling will have consequences, as is true of everyone's life decisions.

5

### A. Recommending Designation to DOC Is Appropriate

Section 3621(b) instructs BOP to consider "recommendations of the sentencing court" in designating "the place of the prisoner's imprisonment." This non-binding recommendation can come after the federal sentence already has been imposed. *See Staton*, No. 3:19-cr-6 (VDO), ECF No. 50, at 2; *United States v. Mete*, 3:13-cr-219 (RNC), ECF No. 31 (D. Conn. Mar. 19, 2015).

While it is unclear whether the federal sentencing judge intended for this sentence to be consecutive to any *future* sentence for any *future* crime committed by Mr. Anderson (to include any crimes Mr. Anderson might commit before his discharge from such federally-imposed term of imprisonment), and while so hinting at such possible recidivism might have drawn criticism of the court, it is within the present court's discretion to issue a non-binding recommendation to BOP that Mr. Anderson be permitted to serve (or to be deemed to have served) his federal sentence while remaining in state custody. On the facts as already thoroughly discussed in this case, it is reasonable to use such discresion.

Accordingly, and while BOP alone is responsible for designation upon considering many factors (among which the sentencing court's recommendation is but one), it is respectfully recommended that BOP designate Mr. Anderson's present state DOC prison for the service of his federal supervised release sentence imposed on July 25, 2008.

### B. The Court Defers to BOP as to the *Nunc Pro Tunc* Date

In the Motion, Atty. Hayes asks that any designation to Mr. Anderson's DOC prison be applied *nunc pro tunc* to different specific dates which include "August 5, 2011," ECF No. 72, at 1, and, more generally, "March, 2011," *id.* at 6. However, he also suggests *nunc pro tunc* dates of "March 5, 2011," ECF No. 72, at 2–4, and (again) "August 5, 2011,"

ECF No. 75, at 1, with suggestions that an appropriate date might be one in early 2011 or perhaps "early 2012," ECF No. 72, at 2 (referencing the state sentence to which the instant supervised release term was to run consecutively, noting, "Had the state sentences run their course and been immediately followed by the federal sentence, Mr. Anderson would have completed his term in early 2012."). However, the materials presented by Mr. Anderson (through counsel) offer insufficient support for any of the requested *nunc pro tunc* dates. As such, the court leaves BOP to determine any reasonable corresponding *nunc pro tunc* date, in the event that BOP accepts the designation herein respectfully recommended by this court.

Counsel provides no specific justification for the particular *nunc pro tunc* dates in Mr. Anderson's Motion and Updates. *See*, *generally*, ECF Nos. 72, 75, 78. The present supervised release sentence was ordered to run consecutively to a state sentence being served at the time, but the court has not been presented with a sentence calculation performed by the state DOC relative to that underlying state sentence. Thus, the court cannot determine when the relevant federal sentence reasonably should have begun. Indeed, the court has not been presented with even an informal determination by DOC. *Cf.* Ex. 1 (providing a "maximum release date" of 02/02/2026 for the state sentence imposed on July 29, 2024, and which Mr. Anderson presently is serving).

Even the start of the relevant state sentence is somewhat unclear in the Motion, which represents that the sentence was imposed on "March 8, 2008," ECF No. 72, at 2, while the attached state judgment mittimuses report that the state sentences were imposed on March 6, 2008, ECF No. 72-1.

7

And while Atty. Hayes claims that the total effective state sentence of five years in prison should have been "completed on March 5, 2011," ECF No. 72, at 2, a five-year sentence starting in March of 2008 presumably would have expired by March of 2013, and not March of 2011 or August of 2011 (some of the *nunc pro tunc* requests from counsel). Insofar as counsel could be relying on pretrial jail credits or other information, that detail is not provided anywhere within the materials presented to this court.

Also absent is any support for a specific *nunc pro tunc* date of August 5, 2011, though counsel requests it at Page 1 of the Motion and Updates, ECF Nos. 72, 75, 78. The reason for the repeated request for this *nunc pro tunc* date remains a virtual mystery.

Even the representation that granting the Motion "would allow Mr. Anderson, once he finishes [serving] his state sentences, to immediately be available for transfer to an inpatient mental health program as part of his supervised release," ECF No. 78, at 3, is questionable.  First, it is unclear which "supervised release" counsel is referencing, as Judge Droney imposed a federal prison sentence of "12 months and 1 day," while specifying, **"No supervision to follow."**  ECF No. 70, at 2 (emphasis added).  And whereas Atty. Hayes represents that Mr. Anderson's state defense lawyer at one time intended to "request a time served [state] sentence to allow [him] to immediately transfer to a mental health facility," ECF No. 72, at 2 n.1; *see also* ECF No. 75, at 1, it is unclear that any such opportunity would have been a realistic option.  The state sentencing transcript from July 19, 2024, provided by Atty. Hayes, includes the following quote from state **defense counsel:** "I don't know if there's a place in the State of Connecticut where [Mr. Anderson] could get what he needs.  There was a plan in place for him to potentially transition to that.  That plan, you know, had -- that plan didn't happen, unfortunately."

8

ECF No. 78-1, at 15:11–15 (CM/ECF pagination).  Even more telling, at the start of that same state proceeding, **the court** (*Hon. Kathleen E. McNamara, J.*) indicated that "we have worked very hard to get his treatment.  He had a special bed for special areas where he would be taught how to live outside the corrections facility, and that was all set up and then last minute **he changed his mind.**"  *Id.* at 7:12–18 (emphasis added).  Leaning on years of experience in presiding over Mr. Anderson's case(s), the court held that "I've never seen that he's been incompetent based on the conversations we've had through six years, but this is his behavior.  ***When you get close to something, he doesn't want to get out and he fires lawyers.  He does other things.***"  *Id.* at 8:3–7 (emphasis added) (noting that as Mr. Anderson seems to sabotage plans for him to access services outside of prison).  Judge McNamara indicated that all parties involved had "worked extensively with Mr. Anderson and his case.  I mean, *extensively*, for years.  But he gets scared when it's time to go out because he spent his whole life being incarcerated."  *Id.* at 9:15–18 (emphasis added).  The state court also found, "I don't think it's an inability.  I just think he doesn't want to" communicate with counsel or take their advice.  *Id.* at 9:12–13.

On this record, there is insufficient support for Atty. Hayes's suggestion that there is some type of plan for psychiatric or other care upon Mr. Anderson's discharge from prison, which also might explain why there is **no detail** as to what that might entail (such as the name of any facility to which he has been accepted and to which he would transition upon his release from prison).  Furthermore, even if some plan were in place, it appears from the state sentencing transcript that little to no faith should be placed in Mr. Anderson following through with any such services, even if they were available.

9

Absent any state sentencing calculation or other proof as to the completion date of the state sentence, and any documentation that Mr. Anderson has a mental health facility waiting to take him in on a certain date (or that such opportunity would be lost if not realized by some certain date), the court leaves BOP to determine how it should exercise its "authority to make the *nunc pro tunc* designation sought by" Mr. Anderson. *See McCarthy*, 146 F.3d at 123 (holding that Section 3621(b) authorizes BOP to make *nunc pro tunc* designations).

### IV.   <u>CONCLUSION</u>

For all of the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Mr. Anderson's Motion is **GRANTED in part** and is **DENIED in part,** insofar as:

**(1)** The court respectfully recommends that BOP designate Mr. Anderson's current DOC facility for the service of his federal sentence imposed on July 25, 2008, and

**(2)** The court defers to BOP as to the *nunc pro tunc* date which might be applied to any such designation (should BOP order it), based upon the completion date of the state sentences imposed on March 6, 2008 (to which the present federal sentence was ordered to run consecutively).

**IT IS SO ORDERED** in Hartford, Connecticut, this 17th day of September, 2025.

          /s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE

**EX. 1**



### Inmate Information

| | |
|---|---|
| Inmate Number: | 139042 |
| Inmate Name: | ANDERSON,FRANCIS |
| Date of Birth: | 6/24/1969 |
| Latest Admission Date: | 7/23/2007 |
| Current Location: | MACDOUGALL-WALKER (WALKER BUILDING) |
| Status: | SENTENCED |
| Bond Amount: | 0 |
| Controlling Offense*: | ASSAULT ON POLICE OR FIRE OFFICER CF |
| Date of Sentence: | 7/19/2024 |
| Maximum Sentence: | 3 Year(s) 0 Month(s) 0 Day(s) |
| Maximum Release Date: | 2/2/2026 |
| Estimated Release Date: | Not Applicable |
| Special Parole End Date: | 2/2/2026 |
| Detainer: | FEDERAL |

Register with Connecticut Statewide Automated Victim Information and Notification (CT SAVIN)

CT SAVIN is a free, confidential service that gives crime victims and members of the community information about an offender's case.

Due to possible changes in the application of Risk Reduction Earned Credits, release dates may be subject to change.

*The inmate may be serving time for additional offenses. You can check the judicial website.